OPINION
Defendant-appellant James A. Touvell appeals his convictions and sentences entered by the Guernsey County Court of Common Pleas on one count of felonious assault, in violation of R.C. 2903.11(A)(1), with an attendant firearm specification, and one count of misdemeanor assault, in violation of R.C. 2903.13, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On April 17, 2000, the Guernsey County Grand Jury indicted appellant on one count of aggravated burglary, in violation of R.C. 2911.11; two counts of felonious assault, in violation of R.C. 2903.11(A)(1), with an R.C. 2941.141 firearm specification attached to one of those counts; and one count of misdemeanor assault, in violation of R.C. 2903.13. At his arraignment on April 20, 2000, appellant entered pleas of not guilty to all the charges. A jury trial commenced on September 12, 2000.
The following evidence was adduced at trial. Mary Bell testified appellant telephoned her residence at the Coventry Heights Apartments between 7:00 and 7:30 p.m. on March 20, 2000, to speak with her son, John Lumpkin. Shortly thereafter, there was a knock on the door of the apartment. When Bell opened the door, appellant shoved her out of the way and entered the apartment. Bell testified she did not invite appellant into her residence.
Appellant confronted Lumpkin, who was lying on the couch, about certain items of personal property belonging to appellant's sister and Lumpkin's ex-girlfriend, Shirley Wilson, which were located in a storage facility leased by Lumpkin. According to Bell, Lumpkin informed appellant he (Lumpkin) was not going to the storage facility at that time of night and would deal with it in the morning. Appellant became angry and started to hit Lumpkin, eventually knocking Lumpkin off the couch onto the floor. Bell attempted to pull appellant off her son, but appellant kicked her and she fell over a coffee table. Thereafter, Bell observed appellant and Lumpkin in a scuffle. During the struggle, appellant located a handgun beneath the cushions of the couch. Appellant pointed the gun at Lumpkin and pulled the trigger, but the gun did not fire. Appellant's second attempt to fire the gun at Lumpkin was likewise unsuccessful. Thereafter, appellant aimed the gun at Bell, but the gun did not fire. Bell moved toward the telephone to call 911, but appellant struck her with his fists. Bell screamed for help. A neighbor and the apartment manager arrived as appellant was running out of the apartment.
John Lumpkin testified he and Shirley Wilson had been dating for approximately three years. On January 13, 2000, Wilson moved out of the house she and Lumpkin shared in Cuyahoga Falls, Ohio. Because Lumpkin was scheduled for a three month layoff from his job at a flexible packaging company, he decided to transfer his seniority from the company's Akron plant to a plant in California. Lumpkin moved out of his Cuyahoga Falls residence and placed his belongings in a storage facility in Byesville, Ohio. On March 19, 2000, while Lumpkin and his brother were at the storage facility, unloading Lumpkin's belongings, Wilson appeared. Lumpkin advised Wilson he expected her to return the property belonging to him which she had removed when she left their residence in January. Approximately forty-five minutes after Wilson left the storage facility, appellant appeared and instructed Lumpkin to stay away from his sister. Lumpkin attempted to explain his side of the situation to appellant, but appellant left the storage facility, stating, "You don't want me getting involved in this." Tr. at 254.
The following evening, on March 20, 2000, Lumpkin and Bell were watching a movie at Bell's apartment. Lumpkin received a telephone call between 7:00 and 7:30 p.m. from appellant who informed Lumpkin he (appellant) wanted Wilson's belongings and wanted Lumpkin to meet him at the storage facility. Lumpkin advised appellant he would not go to the storage facility that evening, but would deal with the situation the following day. Shortly thereafter, there was a knock on the door of his mother's apartment. As Lumpkin was laying on the couch, he observed Bell open the door and appellant pushed her out of the way. Lumpkin informed appellant he would deal with the situation in the morning. Appellant disagreed stating, "We're dealing with this tonight * * * We're settling this tonight I took off work." Tr. at 269. When Lumpkin again told appellant they would deal with the situation the following day, appellant began to punch Lumpkin.
Appellant hit Lumpkin on the side of the head, driving his hearing aids into his ears. Lumpkin attempted to push appellant off of him. Lumpkin observed appellant kick Bell over the coffee table, and strike her with his fists as she crawled across the floor toward the telephone. Lumpkin reached underneath the cushions of the sofa for his 9mm Beretta, but appellant gained control of the gun before Lumpkin could do so. Appellant aimed the gun at Lumpkin and pulled the trigger twice, but the gun did not fire. Appellant pointed the gun at Bell and pulled the trigger, but again the gun did not fire. Lumpkin testified the gun was fully loaded with ten rounds of live ammunition. As appellant fumbled with the gun, Lumpkin ran to a closet and retrieved a baseball bat. Lumpkin charged after appellant with the baseball bat. Appellant ran out of the apartment with the gun. A neighbor and the apartment manager came to investigate the commotion.
Fred Ted Savage, the manager of Coventry Heights Apartments, testified he was walking between buildings on the evening of March 20, 2000, when he observed an individual holding something down at his side. The individual walked towards a car with its headlights on parked in the unloading zone. The individual entered the car on the passenger's side. Savage heard Bell screaming, "He's got a gun. He's got a gun." Tr. at 364. Thereafter, Savage observed a black Thunderbird pull into the parking lot next to the parked car. Savage recognized the Thunderbird as the vehicle owned by Shirley Wilson, who had recently spent time with Lumpkin at Bell's apartment. After the two vehicles left the apartment complex, Savage proceeded to Bell's apartment. Savage saw Bell, who was shaking, standing at the end of the living room. He noticed the coffee table was knocked over, and its contents spread over the floor. Savage also observed Lumpkin, whose nose and ears were bleeding. Lumpkin informed Savage he and his mother were assaulted by appellant.
Sgt. Mike Shepard of the Guernsey County Sheriff's Department testified he became involved with the case on March 21, 2000. Sgt. Dale Lyons presented Shepard with evidence Lyons and Deputy Fred Umstott collected from the scene. Included in the evidence was a 9mm firearm. The sergeant test fired the weapon and found it to be operable.
Appellant testified on his own behalf. He stated he worked until 7:00 p.m. on March 20, 2000. When he returned home, he showered and called Lumpkin. Appellant advised Lumpkin Wilson had agreed to return Lumpkin's belongings to him, and asked Lumpkin to meet him at the storage facility that evening. Appellant also asked Lumpkin about the items belonging to Wilson. Lumpkin told appellant he (Lumpkin) would give Wilson $20 to replace her belongings, however, he refused to meet appellant and Wilson at the storage facility. Appellant testified he and Lumpkin were disconnected during their conversation, so he decided to go over to Bell's apartment to resolve the matter with Lumpkin. Appellant arrived at the apartment and knocked on the door. According to appellant, when Bell opened the door, he observed Lumpkin on the couch. Bell moved out of the way and motioned for appellant to enter the apartment. Appellant testified he tried to rectify the situation with Lumpkin, but Lumpkin merely badmouthed Wilson and refused to deal with the matter. As Lumpkin moved from a lying position to a sitting position on the couch, appellant noticed Lumpkin was wearing a holster with a gun and his hand was moving toward it. Appellant jumped toward Lumpkin, swung and missed. Appellant hit Lumpkin with his right hand as he tried to get the gun away from Lumpkin with his left hand. Bell jumped on appellant's back and tried to pull him off of her son. Appellant shook his shoulders, causing Bell to lose her balance and fall. Appellant eventually took possession of the gun.
Appellant recalled Lumpkin climbing over the couch towards a closet. Appellant pointed the gun at Lumpkin and instructed him to stop. Lumpkin proceeded to the closet. Again, appellant told Lumpkin to stop. Lumpkin stopped and looked at appellant, realizing appellant could place a shell in the gun chamber. At that time, Bell was on the telephone calling 911. Appellant informed Bell and Lumpkin he was leaving, which he did. Appellant testified he never pointed the gun at Bell.
After hearing all the evidence and deliberations, the jury found appellant guilty of one count of felonious assault with a firearm specification and one count of misdemeanor assault. The trial court issued a Judgment of Conviction on September 15, 2000. On October 19, 2000, the trial court sentenced appellant to a term of imprisonment of four years on the felonious assault conviction and three years on the firearm specification. The trial court ordered these terms to run consecutively to each other. The trial court also sentenced appellant to a term of six months on the misdemeanor assault conviction, and ordered the sentence to run concurrently with the sentences on the felonious assault conviction and firearm specification. The trial court memorialized the sentence via Judgment Entry of Sentence filed October 19, 2000.
It is from these convictions and sentences appellant prosecutes this appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A THREE-YEAR MANDATORY TERM FOR THE FIREARM SPECIFICATION PURSUANT TO R.C.2941.145, WHERE APPELLANT WAS INDICTED FOR AND FOUND GUILTY OF A FIREARM SPECIFICATION PURSUANT TO R.C.2941.141, WHICH PROVIDES FOR IMPOSITION OF NO MORE THAN A ONE-YEAR TERM OF IMPRISONMENT.
 II. THE TRIAL COURT ERRED IN GIVING INSTRUCTIONS TO THE JURY REGARDING OTHER ACTS EVIDENCE, AND FURTHER ERRED IN GIVING CONFLICTING AND CONFUSING INSTRUCTIONS REGARDING THE USE OF OTHER ACTS EVIDENCE.
 III. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In his first assignment of error, appellant maintains the trial court erred in sentencing him to a mandatory term of three years on the firearm specification pursuant to R.C. 2941.145. Appellant explains he was indicted under and found guilty of R.C. 2941.141, which imposes a mandatory term of only one year of imprisonment.
The Guernsey County Grand Jury's April 17, 2000 indictment contained a firearm specification to Count 3, felonious assault, which was framed in the language of R.C. 2941.141(A):
 (A) Imposition of a one-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be in substantially the following form:
"SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT).
 The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense.)" * * *
As indicted, the specification carried a penalty of a mandatory one-year incarceration. R.C. 2929.14(D)(1)(a)(iii). With respect to the firearm specification, the trial court instructed the jury as follows:
 Now, ladies and gentlemen as I have advised you in this case as to Count 3, felonious assault, there is what in law is called a firearm specification. If your verdict to Count 3 is guilty, and only if your verdict is guilty, you will separately decide whether the defendant, James Touvell, had a firearm on or about his person or under his control while committing the offense charged in Count 3 of the indictment.
 A firearm means under Ohio law any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosion or combustible propellant. Firearm includes an unloaded firearm or any firearm which is operable but may — but which can be readily rendered operable.
Tr. at 570-571.
The Verdict on Specification Count Three, as signed by the jury, reads:
 If your verdict is guilty to Count Three, a felony offense, you will separately decide whether the Defendant had a firearm on or about his person or under his control, while committing the offense charged in Count Three of the Indictment, Felonious Assault, a felony.
_______________________________________
 We, the jury, find that the Defendant* _____________ Did
______________________ have a firearm while committing the offense of felonious assault, a felony, as charged in Count Three of the Indictment.
The trial court's October 19, 2000 Judgment Entry of Sentence states:
 The Court finds that the defendant has been convicted of the following:
 A) "FELONIOUS ASSAULT", in violation of Revised Code Section 2903.11(A)(1), a felony of the second degree, subject to division (D) of Section 2-0219.13 of the Ohio Revised Code.
 B) SPECIFICATION: The Defendant had a firearm on or about his person or under his control while committing the offense.
 C) "ASSAULT", in violation of Revised Code Section 2903.13, a misdemeanor of the first degree.
However, the trial court proceeded to sentence appellant to a mandatory three years of imprisonment in accordance with R.C. 2941.145, which provides:
 (A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form:
 "SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense)." * * *
Pursuant to the plain language of R.C. 2941.145(A), the trial court was precluded from imposing a three-year mandatory prison term upon appellant because neither the indictment nor Count 3 in the indictment specified appellant "had a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." Accordingly, we find the trial court erred in sentencing appellant to a three year mandatory term rather than a one-year mandatory term. Furthermore, contrary to appellee's argument, we do not find the trial court de facto amended the indictment to charge a firearm specification pursuant to R.C. 2941.145. The jury instructions, the verdict form, and the trial court's finding set forth in the Judgment Entry on Sentence belie appellee's assertion.
Appellant's first assignment of error is sustained.
 II
In his second assignment of error, appellant asserts the trial court erred in instructing the jury relative to other acts evidence, including giving conflicting and confusing instructions.
In reviewing jury instructions on appeal, we must examine the specific charge at issue in the context of the entire charge, not in isolation.State v. Thompson (1987), 33 Ohio St.3d 1, 13. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of that discretion. State v. Guster (1981), 66 Ohio St.2d 266,271. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
With respect to other acts evidence, the trial court instructed the jury as follows:
 Ladies and gentlemen of the jury, in this case there was evidence received about the commission of prior crimes and evidence that the defendant was convicted of prior breaking and enterings and felonious theft. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in accordance with that character. If you find that the defendant was convicted of prior breaking and enterings and a felony theft you may consider that evidence only for the purpose of testing the defendant's credibility or believability and the weight to be given the defendant's testimony. It cannot be considered for any other purpose.
 Now, evidence was received that the defendant has been convicted of prior felonies. The evidence was received only for the limited purposes and it was not received and you may not consider it prove the character of the defendant or in order to show he acted in conformity with that evidence in this case. If you find the defendant has been convicted of prior felonies you may consider the evidence only for the following limited purposes: To test the defendant's credibility or believability and the weight to be given to the defendant's testimony and decide whether it proves the absence of a mistake or accident; the defendant's motive or opportunity or intent or purpose or preparation or plan to commit the offenses charged in this trial; the knowledge of circumstances surrounding the offenses charged in this trial; or the identity of the person who committed the offenses in this trial.
Tr. at 578-579.
Because we would not have found the trial court abused its discretion in admitting the other acts evidence as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," we find the trial court did not abuse its discretion in giving the aforequoted instructions, although the instruction was inconsistent as to the jury's use of the other acts evidence.
Appellant's second assignment of error is overruled.
 III
In his final assignment of error, appellant raises a manifest weight of the evidence claim.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380,387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
The jury convicted appellant of the felonious assault of Mary Bell, in violation of R.C. 2903.11(A)(2), which provides:
 (A) No person shall knowingly do either of the following:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance;
Appellant asserts the State did not prove the culpable mens rea of "knowingly." R.C. 2901.22 defines "knowingly" as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
The testimony of Mary Bell and John Lumpkin reveal appellant aimed the gun at Bell and pulled its trigger on at least one occasion. Although appellant testified he did not aim the weapon at Bell, the jury was free to accept or reject this testimony in light of the contrary testimony of Bell and Lumpkin. There exists sufficient competent and credible evidence to support the jury's determination appellant knowingly attempted to cause physical harm to Bell by means of a deadly weapon. Accordingly, we find appellant's conviction of felonious assault was not against the manifest weight of the evidence.
Appellant's third assignment of error is overruled.
The October 19, 2000 Judgment Entry of Sentence of the Guernsey County Court of Common Pleas is affirmed in part and reversed in part, and remanded to the trial court for further proceedings in accordance with the law and this opinion.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the October 19, 2000 Judgment Entry of Sentence of the Guernsey County Court of Common Pleas is affirmed in part and reversed in part, and remanded to the trial court for further proceedings in accordance with the law and this opinion. Costs to be divided equally.
 ______________________ Hoffman, P.J.
Wise, J. and Boggins, J. concur.